**Wesley Waterford SOUTH, Plaintiff,**

v.

**FEDERAL BUREAU OF INVESTIGATION, Defendant.**

No. 79 C 1551.

United States District Court,
N. D. Illinois.

March 10, 1981.

Mark K. Schoenfield, Northwestern Univ. Legal Clinic, Chicago, Ill., for plaintiff.

Vincent M. Garvey, Daniel J. Metcalfe, Dept. of Justice, Washington, D.C., for defendant.

MEMORANDUM AND ORDER

MORAN, District Judge.

The plaintiff Wesley Waterford South brings this action claiming that he is entitled to damages under the Privacy Act, 5 U.S.C. § 552a *et seq.* The defendant FBI released records to a third party pursuant to the Freedom of Information Act, 5 U.S.C. § 552. In doing so, the government failed to excise plaintiff's name from one of the released documents in alleged violation of the Privacy Act. The document identified plaintiff as a "potential security informant." An article written in The Chicago Tribune on May 15, 1978 revealed the contents of the memo, which plaintiff claims subjected him to "public contempt and ridicule, loss of dignity and self-respect." He seeks damages from defendant as a result of his injuries.

Defendant has filed a motion to dismiss the complaint for lack of subject matter jurisdiction. Plaintiff has countered with a motion for partial summary judgment as to liability. Both motions are denied for the reasons hereinafter stated. Plaintiff has sought answers to interrogatories and requests to produce to which defendant has

refused to respond. The plaintiff seeks a motion to compel and sanctions for failure to respond. Defendant counters with a cross motion for a protective order. Both motions, which are tactically related to the substantive motions, are denied, and defendant is directed to answer or object to the discovery requests within 30 days. Finally, the government's motion to strike is denied, the court not having relied in any respect on the Moss affidavits and plaintiff now being able to proceed by discovery to determine relevant matters.

■ The Privacy Act specifies that the government shall not disclose records pertaining to an individual where the agency has not first obtained permission from the individual. 5 U.S.C. § 552a(b). The Act provides a remedy for the violation whenever any agency:

(g)(1)(D) fails to comply with any other provision of this section, or any rule promulgated thereunder, in such a way as to have an adverse effect on an individual
. . . .

The Act further provides that:

(g)(4) In any suit brought under the provisions of subsection (g)(1)(C) or (D) of this section in which the court determines that the agency acted in a manner which was intentional or willful, the United States shall be liable to the individual
. . . .

The defendant makes much of the distinction between sections (g)(1) and (g)(4). It views the former as a general grant of a right of action for remedial relief and the latter as a special waiver of sovereign immunity raising additional jurisdictional requirements when damages are sought. The plaintiff urges that (g)(1) provides the threshold jurisdictional requirement and that (g)(4) establishes only the additional elements necessary for recovery of monetary damages in an action brought under (g)(1). We need not decide this issue because jurisdiction in this court is proper whichever way this court chooses to view the matter. Under the plaintiff's view, jurisdiction is appropriate once a violation has been established and the plaintiff is ag-

grieved by it. The defendant here concedes improper disclosure and the plaintiff properly pleads allegations of an adverse effect upon him. Similarly, if the plaintiff is required to show intentional and willful conduct as a threshold jurisdictional requirement, he has adequately pleaded a colorable claim.

■ Since plaintiff pleads a colorable claim, plaintiff cannot be foreclosed from seeking discovery to sustain it solely because of defendant's sworn denials. The motions to dismiss and for partial summary judgment raise, however, an issue bearing upon the possible merits of the claim, and it would serve no useful purpose to further delay disposition of that issue.

The essential dispute between the parties focuses upon whether the defendant's improper release of documents was "intentional or willful" within the meaning of the statute. The defendant insists that its actions resulted from "mere inadvertence" or negligent conduct for which the Privacy Act provides no monetary remedy. The plaintiff maintains that the defendant's actions were intentional and willful as he defines that term, or at the very least raises a question of fact under the defendant's definition.

The court must squarely define the statutory standard "intentional or willful" before the parties can determine their potential rights and liabilities under it. In accord with general rules of statutory construction, this court will first attempt to find the plain meaning of the term. The defendant presents the court with the common definition of these terms as referring to "conscious," "knowing" and "designed" acts, citing *Black's Law Dictionary*. That definition, however, fails to account for more subtle characterizations that courts have used to describe the terms. In the securities area, for example, courts have commonly required something more than negligence but less than a "design" to impose liability.

In *Wasson v. SEC*, 558 F.2d 879 (8th Cir. 1977) *rehearing denied*, the Eighth Circuit construed the word willful, commenting:

In negligence law the words 'willful', 'wanton' and 'reckless' are employed singly or in combination to characterize conduct more heinous or culpable than ordinary negligence ... in several securities cases ... violations were found where the defendant proceeded in apparent disregard of or with reckless indifference to a known obligation or set of facts. *Id.* at 887.

The Ninth Circuit in *Sorenson v. United States*, 521 F.2d 325 (9th Cir. 1975) defined willful conduct as "reckless disregard for obvious risks". The Seventh Circuit in *Sundstrand v. Sun Chemical Corp.*, 553 F.2d 1033 (7th Cir. 1977) observed that recklessness is sometimes considered a form of intentional conduct for purposes of imposing liability for some act. *Id.* at 1039. The Seventh Circuit held that the district court acted correctly in employing the intentional or reckless test.

 The above discussion indicates that the words "intentional or willful" are used as terms of art and given broader scope by courts than the common definition would imply. To properly construe the statute at issue, this court must attempt to give effect to its intended meaning. The legislative history of the Act provides such guidance.

A Congressional statement regarding the "intentional and willful" standard was reported in the Congressional Record:

> The standard for recovery of damages under the House bill would have rested on the determination by court that the agency acted in a manner which was willful, arbitrary, or capricious. The Senate bill would have permitted recovery against an agency on a finding that the agency was negligent in handling his records.

> These amendments represent a compromise between the two positions, permitting an individual to seek injunctive relief to correct or amend a record maintained by an agency. In a suit for damages, the amendment reflects a belief that a finding of willful, arbitrary, or capricious action is too harsh a standard of proof for an individual to exercise the rights granted by this legislation. Thus the standard for recovery of damages was reduced to "willful or intentional" action by an agency. On a continuum between negligence and the very high standard of willful, arbitrary, or capricious conduct, this standard is viewed as only somewhat greater than gross negligence.

*Congressional Record—Senate* S. 21817 (Dec. 17, 1974)[1] The defendant points out that the differences between the House and Senate bills were not resolved by a conference committee but rather they were worked out informally due to the lateness of the session. See *Cell Associates v. National Institute of Health*, 579 F.2d 1155 (9th Cir. 1978). Nonetheless, they express Congressional intent with regard to the meaning of the statute. The fact that it was not resolved by conference committee does not defeat that. The defendant also points to amendments to the House bill that were rejected. Those amendments would have permitted recovery for a "mistake unintentionally made" and for "any inadvertent inaccuracy." These standards are both negligence standards, and the legislative history quoted above clearly does not provide a remedy for negligent acts. Defendant's argument, thus, does not undermine the above quoted passage.

Judicial interpretations of the intentional and willful standard under the Privacy Act are sparse. The only court to discuss this standard in any detail is the Tenth Circuit in *Parks v. Internal Revenue Service*, 618 F.2d 677 (10th Cir. 1980). That court noted that negligence was not enough but that "it does not appear that premeditated malice is required." The court cited the legislative history quoted above. The court's comments suggest a gross negligence or recklessness standard would be sufficient to provide a remedy under the Privacy Act.

The Eighth Circuit suggested the standard requires a "knowing" release of docu-

1. Similar language appears in the Analysis of House and Senate Compromise Amendments to the Federal Privacy Act, reprinted in 120 Cong.Rec. 40405, 40406 (1974).

ments, *Bruce v. United States*, 621 F.2d 914 at 916–917 (8th Cir. 1979). Another court has suggested the standard requires evidence of an "intentional failure," *Houston v. Department of the Treasury*, 494 F.Supp. 24 (D.D.C.1979).

 This court is persuaded that the "only somewhat greater than gross negligence standard" should apply in this case. There are material issues of fact as to whether the plaintiff has met this standard based upon the evidence in the record. For that reason, the defendant's motion to dismiss is denied and the plaintiff's motion for partial summary judgment is denied.